# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RIVERWOOD PARTNERS, LLC, a Nevada Limited-Liability Company,

    Plaintiff,

v.

MAX BAER PRODUCTIONS, LTD., a California corporation,

    Defendant.

3:10-cv-668-RCJ-VPC

**ORDER**

_____

    Currently before the Court is Plaintiff Riverwood Partners, LLC's ("Riverwood") Motion to Dismiss Defendant Max Baer Productions, LTD's ("MBP") Counterclaim (#9). The Court heard oral argument on July 5, 2011.

## BACKGROUND

    Riverwood alleged the following in its amended complaint. (Am. Compl. for Deficiency J., Nov. 16, 2010, ECF No. 3). In September 2007, Riverwood and MBP entered a sales agreement for 21.42 acres of land in Douglas County, Nevada in which MBP agreed to purchase the land. (ECF No. 3 at 2). Subsequently, MBP and Riverwood entered a straight note agreement for $500,000 secured by a deed of trust around October 2007. (ECF No. 3 at 2). The deed of trust was limited to the southerly 15.83 acres of the purchased land. (ECF No. 3 at 2). By the terms of the straight note, MBP agreed to repay the note 30 days after the resolution of a lawsuit that MBP faced but no later than two years from the note's creation. (Mot. to Dismiss Ex. 1 at 2, Jan. 21, 2011, ECF No 9-1). The lawsuit against MBP was

resolved August 11, 2009, making the straight note payment due September 10, 2009. (ECF No. 3 at 3).

Additionally, Riverwood and MBP entered into a Development Agreement secured by the same deed of trust. (ECF No. 3 at 3). Under the Development Agreement, MBP was obligated to pay its pro rata share of the improvement costs for developing the land. (ECF No. 3 at 3). Riverwood sent a written request for payment of $273,656.84 on September 16, 2009. (ECF No. 3 at 3). Riverwood alleges that, as per the Development Agreement, MBP had 15 days to pay the requested amount. (ECF No. 3 at 3). MBP has not paid Riverwood. (ECF No. 3 at 3).

Because MBP allegedly defaulted on its obligations under the deed of trust, Riverwood conducted a trustee's sale pursuant to NRS 107.080. (ECF No. 3 at 4). Riverwood brought this action pursuant to NRS 40.455 seeking a deficiency judgment. (ECF No. 3 at 4). Riverwood alleges that at the time of the sale, when combining the straight note, Development Agreement, and interest, MBP owed $923,457.02. (ECF No. 3 at 4).

MBP counterclaimed alleging that the trustee's sale was a wrongful act of domain over the value of the property. (Answer to Compl. and Countercl. 7, Dec. 22, 2010, ECF No. 5). After MBP allegedly defaulted on both obligations, Riverwood caused a trustee's sale of the land to take place. (ECF No. 3 at 3). Riverwood purchased the land at the trustee's sale by submitting the highest credit bid of $10,000. (ECF No. 3 at 3). MBP asserts a claim for damages because, at the time of the sale, the land appraised for approximately two million dollars. (ECF No. 5 at 6). MBP asserts that they are entitled to the excess between the appraised value of the land and the obligations owed to Riverwood. (ECF No. 5 at 6). Thus, MBP counterclaims for one million dollars in damages sustained because of Riverwood's wrongful act of domain over the property secured by the deed of trust. (ECF No. 5 at 7). MBP titled their cause of action "Conversion." (ECF No. 5 at 7).

///
///
///

In a separate case before this Court,[1] MBP sought an injunction to stay the foreclosure and trustee's sale. (Am. Compl. 4, Sept. 9, 2009 ECF No. 2, 3:09-cv-00512). This Court granted a preliminary injunction enjoining Riverwood from foreclosing on the property from January 8, 2010 to January 7, 2011. (Order Regarding Prelim. Inj. 1:22, Jan. 21, 2010, ECF No. 38, 3:09-cv-00512). However, this Court dismissed MBP's complaint including the preliminary injunction on September 20, 2010. (Order Granting Mot. to Dismiss 11, Sept. 20, 2010, ECF No. 117, 3:09-cv-00512). Riverwood conducted a trustee's sale on April 28, 2010. (ECF No. 3 at 3). Riverwood submitted the highest and only bid of $10,000 (credit bid). (Reply to Opposition to Mot. to Dismiss 5, April 28, 2010, ECF No. 18).

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022

---

[1] Although these facts are not in the complaint, answer, or counterclaim, the parties ask the Court to take judicial notice in the motion to dismiss. (ECF No. 9 at 3).

(9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, ___ U.S. at ___, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## DISCUSSION

"Conversion is a 'distinct act of dominion *wrongfully exerted* over another's *personal property* in denial of, or inconsistent with his title or rights therein or in derogation, exclusion or defiance of such title or rights.'" *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000) (quoting *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958)) (emphasis added). Conversion is an act of general intent and a question of fact generally decided by jury. *Id.* Further, the act must be unlawful—neither excused nor justified in the law—to be an act of conversion. *Ferreira v. P.C.H. Inc.*, 774 P.2d 1041, 1043 (Nev. 1989). Although the Nevada

4

Supreme Court has expanded conversion to include intangible property, it did so by expanding the definition of personal property. *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assoc., Ltd.*, 193 P.3d 536, 543 (Nev. 2008). More importantly, an act of conversion only applies to personal property. *Winchell v. Schiff*, 193 P.3d 946, 950 (Nev. 2008); *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006) (explaining that "[c]onversion is a distinct act of dominion wrongfully exerted over personal property").

Here, MBP fails to state a claim for conversion because the facts stated do not support a claim of conversion. The facts clearly explain that the counterclaim concerns real property. Because real property is not under the umbrella of conversion claims, no relief is available.

MBP argues that Riverwood converted money in the form of equity. (Opposition to Mot. to Dismiss 3, Feb. 11, 2011, ECF No.13). MBP alleges that they are entitled to the excess value conveyed to Riverwood after the trustee's sale. (ECF No 13 at 3). However, this argument is without merit. MBP does not cite to any cases, nor are there any cases in Nevada that permit a conversion claim based on distorting the value of real property or equity into personal property. This limitation is reasonable because the debtor must make the agreed payments in order to retain their equity. The debtor's equity is a safeguard against default because the debtor faces loss of the equity through default. This limitation is why many lenders do not allow 100% financing. If a conversion claim allowed recoup of the equity in a lawful foreclosure, the entire debtor-creditor relationship would drastically change. Therefore, because there is no personal property, MBP fails to state a claim for conversion.

MBP has pled facts in the answer and counterclaim showing that it is plausibly entitled to plead the equitable defense of inadequacy of the sale price. However, this defense does not give rise to an affirmative cause of action. A debtor may dispute the adequacy of sale price in deficiency judgment proceedings. *United States v. MacKenzie*, 322 F. Supp. 1058, 1059 (D. Nev. 1971). "A sale under foreclosure may be set aside or an adjustment made in the entry of a deficiency judgment if the inadequacy of the price obtained on foreclosure was so gross as to shock the conscience." *Id.* "Nevada's deficiency legislation is designed to achieve fairness to all parties to a transaction." *First Interstate Bank of Nev. v. Shields*, 730

P.2d 429, 431 (Nev. 1986). Creditors may seek deficiency judgment "only to the extent any alleged deficiency exceeds the fair market value of the sold realty." *Id.* However, "creditors in Nevada may not reap a windfall at an obligor's expense by acquiring the secured realty at a bid price unrelated to the fair market value of the property and thereafter proceeding against available obligors for the difference between such a deflated price and the balance of the debt." *Id.* If the court determines that the value of the property exceeded the amount due, then no deficiency exists. *Id.* Further, "[a] lender in Nevada is not privileged to manipulate sources of recovery in order to realize debt satisfaction in amounts substantially greater than the balance of the debt due." *Id.* at 619.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Riverwood's Motion to Dismiss MBP's Counterclaim (#9) is GRANTED without leave to amend.

DATED: This 21st day of July, 2011.

_____
United States District Judge